The interlocutory judgment should be affirmed so far as appealed from, with costs.

All concurred.

Interlocutory judgment so far as appealed from affirmed, with costs.

---

ELLA O. CODMAN and Others, Respondents, *v.* WILLIAM B. ADAMSON and Others, Appellants.

Third Department, January 6, 1909.

Contract — mining license — parol evidence to explain ambiguity — when subsequent agreement to bear expenses of litigation founded on good consideration.

Where a contract allowing the defendants to mine on the plaintiff's lands on the payment of a royalty provides that the defendants may retain twenty tons of the material free from royalty as compensation for "making roads and bridges to the main road also the cost, etc., of the surveys and the expenses attached thereto," the contract is ambiguous as to whether the twenty tons allowed to the defendants were to cover the expense of surveys made necessary by a suit subsequently brought by third parties attacking the plaintiff's title, or whether the twenty tons were to cover only the cost of the roads and bridges and that extra allowances were to be made by the plaintiff for the surveys. Hence,

parol evidence is admissible to explain the ambiguity and to show what the parties actually intended.

On that question testimony that the plaintiff told the defendants to have the surveys made at her expense and to deduct the cost thereof from her royalties should be considered.

Where such contract did not require the defendants to defend the owner's title or to mine ore unless they desired, so that it was to her interest to defend the litigation attacking her title in order that she might obtain royalties, her subsequent agreement to pay the costs of defending the litigation was based upon a good consideration.

Appeal by the defendants, William B. Adamson and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Warren on the 25th day of July, 1908, upon the decision of the court rendered after a trial before the court without a jury at the Warren Trial Term.

On or about March 15, 1892, Mrs. Sophronia Connors executed, acknowledged and delivered to the defendants as copartners doing business under the firm name of Baeder, Adamson & Co., a contract, of which the following is a copy:

"This Indenture made this 29th day of February, 1892, between Sophronia Connors of the Town of Minerva, N. Y., and Baeder, Adamson & Co. and Charles B. Adamson, Philadelphia, Pa. Witnesseth:

"In consideration of One Dollar and other good and valuable considerations the said Sophronia Connors hereby sells, grants and conveys to Baeder, Adamson & Co. and Charles B. Adamson all her right, title and interest in the garnet or ore called garnet in the ground on the following described property, to wit:

"Being the west half of Lot No. 57, Township fourteen, Totten and Crossfield's purchase, in the Town of Minerva, Essex County, New York, and bounded as follows: On the North by Lot No. 58, being marked State Land. On the West by Lot 64 occupied by H. C. Roblee. On the South by Lot 56 owned by Harrison Roblee. On the East by the East half of said Lot No. 57 with full right and privilege to remove the rubbish to some convenient place or places and dig and mine and carry away said garnet or ore from said lands and each and every year so long as said mining can be made profitable, and said Baeder, Adamson & Co. and Charles B. Adamson agree to pay said Sophronia Connors a royalty of Five Dollars for

each twenty-two hundred and forty pounds taken by them from said lands and to be paid for before loading on cars at North Creek. Said Sophronia Connors to allow said Baeder, Adamson & Co. and Charles B. Adamson twenty tons of garnet free from royalty as compensation for making roads and bridges to main road also the cost &c of the surveys and the expenses attached thereto. In witness whereof the parties hereto have set their hands and seals as of the day and date above written."

The property referred to in the foregoing contract consisted of about eighty acres. Soon after the delivery of the contract an action was instituted against one Eldridge, who was conducting mining operations on said property, and who was doing so under these defendants, in which action it was claimed by the plaintiff therein that he and not the defendants or Eldridge had the right to take the ore from the property. To that action Mrs. Connors was a party defendant, her title being disputed as well as that of Eldridge and these defendants, whose claim of title was derived from her. Expensive surveys became necessary for the purpose of establishing her title to the property in that litigation. The defendants herein defended that action, and it is claimed by them that she verbally authorized such surveys to be made by them and directed that the expense thereof should be deducted from the royalties to which she might become entitled under said contract. The litigation resulted in the establishment of her title.

Mrs. Connors died in the year 1894. This is an action by her heirs at law to recover royalties which accrued under said contract for garnet mined in the years 1902, 1903 and 1904. The defendants claim that by reason of the aforesaid facts such royalties are subject to the expense of the surveys made as aforesaid, which exceeds the amount of such royalties, and which contention on their part has been determined by the trial justice to be without merit.

*Rockwood & Scott* [*Nash Rockwood* of counsel], for the appellants.

*Jenkins, Kellogg & Barker* [*J. A. Kellogg* of counsel], for the respondents.

Cochrane, J.:

A serious and interesting question arises as to whether the cause of action, if any, for royalties under such a contract as the one in question belongs to the heirs at law of Mrs. Connors or to her personal representatives. As the judgment must be reversed for other reasons it is unnecessary now to determine that question.

Plaintiffs' further difficulty arises over the concluding sentence in the said contract as follows : " Said Sophronia Connors to allow said Baeder, Adamson & Co. and Charles B. Adamson twenty tons of garnet free from royalty as compensation for making roads and bridges to main road also the cost &c of the surveys and the expenses attached thereto." Plaintiffs' position in regard to this provision is that twenty tons of garnet have therein been allowed defendants which is to include roads, bridges and surveys and expenses attached thereto and that the contract is, therefore, conclusive against the defendants' claim to compensation for such surveys. I am constrained to disagree with plaintiffs. The contract, in my opinion, is on its face ambiguous. It may be read with the meaning which plaintiffs seek to attach thereto and it may also be understood as meaning that the twenty tons of garnet were to cover only the roads and bridges and that in addition to such allowance Mrs. Connors was to allow for the surveys and expenses attached thereto. It seems to me that the latter construction can be urged with even more plausibility than the former. Should we omit the words "also the cost &c of the" there would be no reasonable doubt that plaintiffs' interpretation would be correct. By well-understood rules of construction, however, we must give the contract a meaning if possible which will make every part thereof serviceable and it may very well be that the application of such rule requires a special significance to be attached to the words above quoted and if that be so the defendants' interpretation must prevail. In any event there is such a doubt and ambiguity appearing from the instrument itself as to make applicable the rule that parol evidence may be received, not for the purpose of changing the meaning of the contract, but for the purpose of explaining the ambiguity and showing what the parties actually intended. (*Thomas* v. *Scutt*, 127 N. Y. 141 ; *Morison* v. *American Telephone & Telegraph Co.*, 126 App. Div. 575 ; *Green Island Water Supply Co.* v. *Trojan Laundry Co.*,

Id. 584.) It was established at the trial by oral evidence that Mrs. Connors on the day when she made the contract and thereafter, litigation as to her title to the property being then imminent or pending, told the representatives of the defendants to have the surveys made at her expense and deduct the cost thereof from her interest in the garnet. She also knew then that such expense would probably far exceed her royalties from twenty tons of garnet which would amount to only $100. It is quite clear that she did not when making her contract intend to limit her entire liability for surveys, bridges, roads, etc., to this latter amount. The trial justice disregarded this oral evidence, evidently believing that the written contract was conclusive. In this I think he was mistaken. Had this evidence been considered it would have explained the ambiguity in the instrument and made clear the intention of the parties as therein carelessly and inartifically expressed.

This oral evidence should also have been considered on another theory. The contract did not require defendants to defend the title of Mrs. Connors or establish her right to the property. Neither did it require them to mine any ore therefrom, but it simply permitted them to do so at such times and in such quantities as they desired. It was to the interest of Mrs. Connors to have ore mined so that she might receive royalties, but the defendants were at liberty to cease operations or to refrain from operations at their pleasure. They could not well proceed in the face of the litigation in which her title was assailed and were not obliged to do so. An agreement, therefore, by her to defend the litigation with a view to having ore mined by the defendants which they were not by the original contract bound to mine was a valid agreement based on a good consideration. Again she was a party defendant to the Eldridge litigation in which her title was attacked and in which as it also appears it was claimed that she had executed to the plaintiff in that litigation a contract similar to the one in question and prior thereto. She had a direct and personal pecuniary interest in that litigation. A judgment adverse to her therein would have nullified her contract with defendants. That litigation was being defended by these defendants and she essentially shared in the fruits of their success. It was in reference to that litigation that she authorized

these defendants to make the surveys and reimburse themselves from her royalties. There was ample consideration for a new and independent agreement on her part to pay the expenses of such surveys even though such expenses were covered in the written contract by the twenty tons of garnet as therein expressed.

The judgment must be reversed on the law and facts and a new trial granted, with costs to the appellants to abide the event.

All concurred, except SMITH, P. J., not voting.

Judgment reversed on law and facts and new trial granted, with costs to appellants to abide event.